AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of New Jersey

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| THOMAS EDWARDS | ) | Case No. |
| | ) | Mag. No. 25-mj-4067 (MJS) |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___November 2024 to August 2025___ in the county of ___Atlantic and elsewhere___ in the
_____ District of ___New Jersey___ , the defendant(s) violated:

| Code Section | Description of Offenses |
|---|---|
| 21 U.S.C. § 846 (contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)) | See Attachment A. |

This criminal complaint is based on these facts:

See Attachment B.

☑ Continued on the attached sheet.

ZACHARY CARROLL

Digitally signed by
ZACHARY CARROLL
Date: 2025.08.05
15:39:41 -04'00'

_Complainant's signature_

Zachary Carroll, FBI Special Agent

_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ _(specify reliable electronic means)_.

Date: ___08/06/2025___

_Judge's signature_

City and state: ___Camden, New Jersey___     Hon. Matthew J. Skahill, U.S. Magistrate Judge

_Printed name and title_

CONTENTS APPROVED

UNITED STATES ATTORNEY


By: */s/Jeffrey B. Bender*
Jeffrey B. Bender, Assistant U.S. Attorney

Date:  August 1, 2025

## ATTACHMENT A

Between at least as early as November 2024 and in or about August 2025, in Atlantic and Essex Counties, in the District of New Jersey and elsewhere, the defendant,

THOMAS EDWARDS,

knowingly and intentionally conspired and agreed with others, known and unknown, to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT B**

I, Zachary Carroll, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, photographs and other evidence. Where statements of others are related herein, they are related in substance and part. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date and time, I am asserting that it took place on or about the date and time alleged.  All quantities are approximate amounts.

1.     On November 19, 2024, in Atlantic City, New Jersey, an FBI undercover agent ("UC") was introduced to Thomas Edwards ("Edwards") for the purpose of conducting controlled purchases of cocaine from Edwards.  During this introductory meeting, the UC completed a controlled purchase of 6 ounces of cocaine from Edwards.  During this meeting and the subsequent meetings between Edwards and the UC described herein, the UC was equipped with a recording device.  The cocaine obtained by the UC from Edwards during this controlled purchase was confirmed by a Drug Enforcement Agency ("DEA") laboratory to be 167.99 grams of 88% pure cocaine.

2.     On December 5, 2024, the UC completed a controlled purchase of cocaine from Edwards in Atlantic City during which the UC provided U.S. currency to Edwards in exchange for 9 ounces of cocaine. The UC arranged this controlled purchase by communicating with Edwards over the phone in advance of the controlled purchase.  During the controlled purchase, Edwards offered to use his source of supply to distribute larger quantities of cocaine to the UC.  The cocaine obtained by the UC from Edwards was confirmed by a DEA laboratory to be 251.2 grams of 86% pure cocaine.

3.     Edwards and the UC continued to communicate after the controlled purchase on December 5, 2024.   During those communications, Edwards explained to the UC that Edwards's drug distribution network has been active for several years; Edwards has a source of supply in or around Los Angeles, California; and Edwards travels to in or around Southern California to place orders for drugs from this source of supply.  Edwards explained to the UC that Edwards planned to travel to Las Vegas, Nevada, between January 17, 2025 and January 21, 2025, and that during this trip, Edwards would rent a car to drive to Los Angeles to make payments for orders of wholesale quantities of drugs that his source of supply would ship to the East Coast for Edwards or Edwards's associates to distribute. Edwards invited the UC to join him on his upcoming trip to Las Vegas to make a payment for a new drug order to be shipped or delivered to the UC.  Flight and other records confirm that Edwards traveled to Las Vegas as he had indicated to the UC, but the UC did not join Edwards during this trip.

4.     During the overnight hours of February 7, 2025 into February 8, 2025, the UC completed another controlled purchase of cocaine from Edwards in Atlantic City during which the UC provided U.S. currency to Edwards in exchange for 4 ounces of cocaine. The UC arranged this controlled purchase by communicating with Edwards over the phone in advance of the controlled purchase. The cocaine obtained by the UC from Edwards was confirmed by a Drug Enforcement Agency laboratory to be 112.1 grams of 86% pure cocaine.

5.     Edwards and the UC continued to communicate after the February 7th/8th controlled purchase. Edwards again invited the UC to join him on an upcoming trip to Las Vegas to make a payment for a new drug order to be delivered to the UC, and the UC accepted Edwards's invitation.

6.     On March 7, 2025, Edwards, the UC, and others drove from Las Vegas, Nevada, toward Los Angeles, California, to place an order for drugs. During the trip, the UC handed Edwards $8,200 in U.S. currency that Edwards was to provide to his source of supply as payment for cocaine to be delivered to the UC. The meeting ultimately took place at a parking lot in the vicinity of San Bernadino, California, as opposed to Los Angeles. Edwards left his car, handed a bag to an individual who was in a Jetta and identified herein as Co-Conspirator 1 (CC-1), and left the Jetta without the bag. Based on my training, experience, and knowledge of the investigation, I believe that the bag contained cash that Edwards provided to CC-1 for cocaine that CC-1 would cause to be delivered to the East Coast for Edwards to distribute to the UC.

7.     On March 21, 2025, the UC completed a controlled purchase of cocaine from Edwards in Atlantic City during which the UC obtained one-half kilogram of cocaine from Edwards in exchange for the U.S. currency that the UC had previously provided to Edwards on March 7, 2025. The UC arranged this controlled purchase by communicating with Edwards over the phone in advance of the controlled purchase. The cocaine obtained by the UC from Edwards was confirmed by a DEA laboratory to be 496.6 grams of 83% pure cocaine.

8.     During the overnight hours of April 12, 2025 into April 13, 2025, the UC completed another controlled purchase of cocaine from Edwards in Atlantic City during which the UC provided U.S. currency to Edwards in exchange for 4 ounces of cocaine. The UC arranged this controlled purchase by communicating with Edwards over the phone in advance of the controlled purchase. The cocaine obtained by the UC from Edwards was confirmed by a DEA laboratory to be 111.4 grams of 87% pure cocaine.

9.     On May 10, 2025, the UC completed another controlled purchase of cocaine from Edwards in Newark, New Jersey, during which the UC obtained one-half kilogram of cocaine in exchange for U.S. currency previously provided to Edwards in Union, New Jersey, on April 25, 2025. The UC arranged this controlled purchase by communicating with Edwards over the phone in advance of the

controlled purchase.   The cocaine obtained by the UC from Edwards was confirmed by a DEA laboratory to be 494.4 grams of 87% pure cocaine.

10.    In late July and early August 2025, the UC communicated with Edwards to arrange another controlled purchase of cocaine from Edwards. During these communications, Edwards agreed to sell cocaine to the UC in New Jersey in August 2025.

ZACHARY
CARROLL

Digitally signed by
ZACHARY CARROLL
Date: 2025.08.05
15:40:27 -04'00'

Zachary Carroll, Special Agent
Federal Bureau of Investigation

Pursuant to Fed. R. Crim. P. 4.1, Agent Carroll was sworn and attested to the contents of this affidavit in support of the search warrant.

Date: August 6, 2025

Honorable Matthew J. Skahill
United States Magistrate Judge

3